v. Microsoft, Inc.   The next case is Tristrata, Incorporated v. Microsoft and Adobe Systems, 2014-11-68. Mr. Wecker. Good morning, Your Honors. May it please the Court, Bruce Wecker on behalf of the appellant Tristrata. This appeal involves a single claim term. The term is seal. It's a common word with a plain meaning. It means to secure, to close off, to prohibit or control access. The courts are quite familiar with this term. It's used often in the context of protecting documents in the court. But don't we interpret claims according to the specification? And doesn't this specification make very clear that the seal is tied in with a security server? No, Your Honor. The specification doesn't make that clear. There are some statements in it about the security server generating the seal, but those are not statements of disavowal. They're statements that in some embodiments, the security server would create the seal. Well, it doesn't have to be a disavowal. I don't understand that. I mean, we've got a disavowal of your construction in there. The question is, what does it mean? That's true. The question is, what does the word seal mean in the context of the patent and the intrinsic evidence? And in the entire intrinsic evidence, there's no use of the term seal that varies from that plain and ordinary meaning that I've suggested. The term is used in its broad functional sense. At times, the specification talks about how it's used or how it's created. The specification says the seal can only be opened by a security server and cannot be interpreted unless the security server opens it. There's a clear linkage there. All over the specification? That portion of the specification only appears twice, once in a clear embodiment and once in the summary of invention. If it's read closely in the summary of invention, it's never linked to the phrase, the present invention, or in accordance with the present invention. That's a declarative statement of a potential feature in the embodiment that the specification is describing. If you go over to the claims, it's clear that the claims are written more broadly. They talk about the seal as being created. They don't talk about the seal as being created by a security server. They don't talk about the seal being encrypted and decrypted by a security server. The claims say that the inventive aspect of this patent is the information that's put into the seal. There are two pieces of information that all the claims refer to as part of the seal. Information about who the requester is, who wants to protect the document, information about who the recipients are. What is your interpretation of the term seal, which is very broad? Wouldn't that include all encryption that's used as computers? The term seal is a data structure that includes these other pieces of information. For example, the appellees argue that... It's so broad that it would cover any computer encryption. The claims would not cover any computer encryption techniques. But your definition of seal would. The word seal, standing alone, is very broad. But when it's considered in the context of you're including pieces of information within the seal and you're attaching it to a document that goes with the document, those are distinguishing features of the claimed invention that are not broad. They're not? They're not broad? No, they're not broad. In fact, invalidity is for later in the case if there's a reversal here. But there is no prior art in our judgment available that has a piece of code that includes those two pieces of information that's attached to a document and travels with the document throughout the network. And that's what Claim 1 of these patents describes. It would have been very easy for the patentee to say a seal generated by a surfer. They didn't say that in the claims. They just said a seal that has these various characteristics. So one place to look very clearly to what is the inventive nature of the patent is the Notice of Allowance, which is in the Joint Appendix at page 247. The examiner said each independent claim identifies a uniquely distinct feature of creating a seal associated with a document which is stored or shared in the computer system or network, placing in the seal identifying the two pieces of information I discussed earlier. The closest prior art, TALA 449, discloses a conventional system for using seals to secure a document and fails to anticipate or render obvious the underlying limitations. So what that says is the examiner understood that the seal itself was not the inventive aspect of this invention. What was was the putting these particular pieces of information within the seal. It also shows that the examiner understood the common plain ordinary meaning of the term seal. At the end, he talks about a conventional system for using seals to secure a document. And that was in the prior art. There's no sense that this word was a coined word. There's no sense that it had no meaning. It clearly had a meaning to the examiner. And that meaning was its broad dictionary meaning that we all understand. So the district court... Well, this particular statement is inconsistent in a couple of ways because the seal in the 449 patent had different aspects described than the seal in the patent suit. And the seal in that 449 patent did not mention anything like the same server has to encrypt and decrypt the seal and doesn't mention anything about servers generating the seal. That patent just very simply used the plain and ordinary meaning of the term seal. So here the district court agreed that the term had a plain English meaning and that the dictionary definition was something that secures. What the district court did not find is that any of the claims were ambiguous or lacking in definition. The district court also didn't find any part of the intrinsic record that contradicted or conflicted with the idea that the patentees were using the term in a broad sense. There's no doubt that in the specification they're talking about a particular embodiment in which the network is arranged in a particular way where security servers and application servers, application clients are all present and passing the seal back and forth. But none of that is stated in the claim. The claim very simply... Is there anything in the specification where the term seal is used not in connection with the security server? So the specification incorporated a series of previous patents and patent applications from the same assignee, Tristrata. And one of those applications which is in the prosecution history and incorporated by reference in the patent was the 350 application which it later got abandoned. In that application, there's very little discussion of a security server. There are discussions of the seal that are independent of any... Well, this specification incorporates by reference that application and also the job here is looking at the entire intrinsic record to understand what the patentee intended by the term seal. And I think it's good evidence that they intended seal to be defined independent of what you can call the network architecture of the system. So would it be fair to say that apart from the 350 application that there's nothing in the specification here that uses the term seal except in connection with the security server? There are passages where seal is used without connection to the security server. But I'm not contending that in the 706 specification proper that those passages are intended to express some embodiment that was different than the main embodiment which was the server generating the seal. Are you incorporating by reference a patent of which this is a continuation? No. The present application is a continuation of certain patent application which is incorporated herein by reference. Well, of course, a patent of which another second is a continuation incorporates it as the same specification. But you're not referring to the first paragraph of the patent which talks about a cross-reference to a related application? No, the incorporations by reference are in later paragraphs. They incorporate both the... And where is that? 08. So the 764 patent begins at A136. You're not talking about column 5? Yeah, column 5 incorporates by reference the 449 patent. That was not the parent patent. That was the earlier TALA patent that the examiner references. Before that, on page 137, column 4, line 55, the patent incorporates by reference the 086 patent. That was the first in the series, but it specifically didn't use the term seal. And then... You wanted to save three minutes for rebuttal? Yes, Your Honor. Thank you. We'll do that for you. Now, appellees have split their argument. Mr. Wiesenberg is going to take eight minutes. That's correct. And you will be conscious of the fact that if you run on, Mr. Belloli won't be pleased. Thank you for that reminder. Good morning. May it please the Court. Eric Wiesenberg on behalf of appellees. Tricerata asks really the wrong question. The question here is not does the term seal have a meaning, but the question is does the term seal have a meaning of somebody of ordinary skill in the cryptographic arts? And when you focus on that question, the answer is plainly no. All the evidence, both of the living inventors testified to that effect, and all of the experts said that the term seal had no special customary meaning in the cryptographic arts. They're not disagreeing with that. They're not disagreeing with that at this point, but we've got a term. We've got to construe it. We've got to figure out what it means. And their argument is that you look to these incorporated references to determine what it means. Well, a couple of responses. I think first you look to the native specification, and there I think the Court agrees every time seal is used, it's connected to its counterpart, the other side of the coin, the security server. The problem with the incorporated by references, first of all, there may be some technical issues involved with whether or not the incorporation was properly done. Leaving that aside, if you look at column five where the first patent is incorporated by reference, the 086, it doesn't incorporate it by reference to illuminate seal. Those first three patents, the 086, the 449, and the application, the 350, has to do with a key derivation. They don't have anything to do with the seal. They do not address that issue. When you get to the 655, which is the parent of the 706 and the 249, you find out what's unique about this family of patents. And if I can, I will read the first two lines of the abstract of the 655, and I'm reading from the 706. An efficient multicast key management is achieved by using seals. A security server generates the seal. So there are the first two sentences. It sets out the problem and the invention of the patents in Sioux. And then if you go to column seven, this is appendix 139, it says at the very bottom line, 64, the method described above solves the broadcast key distribution problem. The broadcast key distribution problem is what these patents are directed to. The 086, the 449, the 350 do not deal with that issue. And I could cherry pick from our own experts' declarations, but let's look at Tristrada's experts' declaration. And this is at appendix page 504, paragraph 19. And he refers to the 706. That's the second in the 655, 706, 249 family, but by convention we're using the 706 as the reference point. The 706 patent takes the special use case of one to many, multicast, and introduces a vehicle for key management called the seal. Introduces a vehicle called the seal. So it's playing from the family of patents at issue here. And we're dealing with a different issue than the 086, 449, and 350. Okay, but I understand your argument. But what does the 350 say about seal? What does it tell us about the meaning? The only thing it says of significance is appendix 89 and then on to appendix 90, where it talks about, in accordance with this invention, a string of bits. This is on 89. Pointers are sent to the user from the central computer. Central computer. And we would submit that even in this ambiguous application directed to a different invention, they still talk about the bits coming. But where does it talk about seal? There is a mention of seal on page 094, looking at line 10. The pointers to the group bucket are known collectively as the permit. The permit is attached to a message or file in an encrypted form. In its encrypted form, the permit is known as a seal. That is exactly consistent with Judge Tiger's construction. This is encryption being done by the central computer. And here we have a subclass of Judge Tiger's construction. Here you have pointer 1 and pointer 2, encrypted by the security server, known as a seal. So to the extent the 350 says anything about seal, and I would submit it's at best ambiguous, it's entirely consistent with what Judge Tiger did. And is it your point that looking at column 6 of this 706 patent, the reference to the 350 application says almost nothing about seal. It's not about the seal. That's exactly right, Your Honor. The 086 doesn't mention seal. The 449, which is also incorporated at bottom of column 4, top of column 5 of that patent, is precisely on point with Judge Tiger's construction. And the 350, as we just discussed, to the extent there's any mention of seal, again, it's consistent. There are encrypted bits that are encrypted by the security server. And when one reads through the specification, it's unavoidable that the security server and the seal are two sides of the same coin. One cannot exist without the other. The purpose of the security server, as Dr. Maziera says, is the broker in this whole arrangement. The invention is to take the load off the author of a document, who would otherwise have to put a separate key in every transmission, in other words, make either a massive number of different documents or a single document with many, many keys in it, and transfers the load to the security server. The security server is now the broker that allows this invention to work. It is at the heart of the invention, and the seal and the security work hand-in-hand. They are two sides of the same coin. So with that, I will turn it over to Mr. Beloli. Fine. He will inherit your minute plus. Thank you. Mr. Beloli. Good morning, Your Honors. Mark Beloli for Adobe. I'll actually be brief unless the panel has some questions. To buttress what my colleague, Mr. Wiesenberg, said, there is nothing in the native specification that ever hints at that the seal could be created, encrypted, or decrypted by anything other than the central security server. And not only that, then they have to go, Tristrata has to go to these incorporated by reference patents. Again, there is nothing in any of those patents and applications that even hints at the fact that the seal, the claimed seal, could be generated by, encrypted by, or decrypted by anything other than the security server. And even when Tristrata was arguing this point, they failed to point to anything in those applications that would be the contrary of Judge Tiger's construction. The fact is this is very, very simple. This is a term that didn't have a meaning in the art. The patentees came up with that meaning. And under Irrededo, the construction can only be as broad as provided for in the specification. And that's exactly what Judge Tiger did. Unless Your Honors have any questions, I will turn it back over to Tristrata. Thank you, Mr. Beloli. Mr. Wecker has a little rebuttal time of less than two minutes. A few points. First, looking at A94, which was the part of the 350 application that was pointed to, there is absolutely no discussion in that passage that a security server generates a seal. It talks about a permit and encrypting the permit to form a seal. But there is nothing in any of the description that preceded that that says where that happens, that a client could take a permit, encrypt it, and then it would be known as a seal. The structure of this application with the central bank, the central bank's computer is not a security server. The central bank's computer is like the application server in the 707 patent, which is communicating with its bank customers. There's necessarily no intermediary like a security server. Yeah, but your problem is it's not as though the 350 application defines the term seal or says that in the industry seal means this. It just says in this context the permit is known as a seal. That doesn't tell us very much, does it? Well, what it tells us, I believe, is that the seal is being used in its plain meaning. There are legions of cases that say if a term is not a highly technical term, is not idiosyncratic, that you can use the general purpose dictionary. The people in the cryptic arts know what the term seal means. So when they approach reading this patent and read the specification and read all these incorporated applications, they will understand that the term itself, seal, is being used in its plain meaning. What Judge Tiger did is import other limitations that don't help define the term. It doesn't help define what a seal is by saying that it's generated by a server. That is kind of a non sequitur, that the seal is a structure claimed in the claims that have various attributes, none of which are about where it was created or how it was encrypted or even whether it was encrypted. Mr. Wakefield may not have noticed the red light is on. The fate of this patent will be sealed, but not yet. We'll take the case under advisement.